# Exhibit A

# IN THE COMMON PLEAS COURT OF HOCKING COUNTY, OHIO



*[Filing stamp: Hocking County Common Pleas Court, 2023 APR 21 PM 2:56, Rhonda Markle, Clerk of Court]*

Robert E. Cline and Dorothy J. Cline
Revocable Living Trust
c/o Robert E. Cline and Dorothy J. Cline,
Trustees
12421 Wildcat Hollow Road,
Rockbridge, OH 43149.

Robert E. Cline
12421 Wildcat Hollow Road,
Rockbridge, OH 43149.

Dorothy J. Cline
12421 Wildcat Hollow Road,
Rockbridge, OH 43149.

          Plaintiffs

Vs.

Columbia Gas Transmission, LLC
c/o Corporation Service Company
3366 Riverside Drive, Ste. 103
Upper Arlington, OH 43221

          Defendant.

Case No.: 23CV0036

Judge: Despotorich

**COMPLAINT FOR BREACH OF CONTRACT, EJECTMENT AND DECLARATORY JUDGMENT**

## FACTS COMMON TO ALL COUNTS

1. Plaintiff, the Robert E. and Dorothy J. Cline Revocable Living Trust, hereinafter ("Trust") is the title owner of two adjacent tracts of property situated in Laurel Township of Hocking County, Ohio totaling approximately 17.8596 acres.

2. Plaintiffs Robert and Dorothy J. Cline, husband and wife, are both the Trustees and the Beneficiaries of the Trust and are the occupants of the home that is referenced below. Collectively with their Trust they will be referred to herein as "Plaintiff".

3. The smaller of the two parcels the Trust owns is known as Hocking County Auditor's Parcel Number 08-000013.0200, which is a 7.8596 acre tract which is improved by a residence utilized by Robert E. and Dorothy J. Cline as their home.

4. The larger parcel owned by the Trust is a 10 acre tract and is known as Hocking County Parcel Auditor's Number of 08-000013.0300, which is unimproved.

5. Collectively, the two parcels are known as 12421 Wildcat Hollow Road, Rockbridge, OH 43149.

6. Columbia Gas Transmission, LLC, hereinafter ("Columbia"), maintains a natural gas pipeline that bisects the Plaintiff's 7.9 acre tract.

7. Columbia refers to the gas pipeline as Line No. SRW12002.

8. Columbia claims that it has the right to maintain the gas pipeline across the Trust's property as a result of a Right of Way Agreement hereinafter ("Right of Way") negotiated between its predecessor the Ohio Fuel Gas Company and Eva Mae Stevens and Jesse Stevens dated July 1, 1954, which was filed for record in the Hocking County Recorder's Office on August 10, 1954, and is located in Deed Volume 99 Page 615.

9. A copy of this Right of Way is attached hereto and incorporated herein as "Exhibit A."

10. At the time of the execution of the Right-Of-Way, Eva Mae Stevens and Jesse Stevens owned 83 acres of land in Laurel Township of Hocking County, Ohio.

11. Plaintiff's approximate 18 acres make up a significant portion of the original 83 acre that are subject to the Right of Way.

12. The Right-Of-Way Agreement, in operative part states:

> *"While gas is conveyed through said premises, Grantors, their heirs and assigns, shall have the right to purchase gas for domestic use in one dwelling on said premises, subject to the Company's rules and regulations at the rate provided in the current established rate schedule filed with the Public Utilities Commission of Ohio applicable in the territory where gas is to be delivered..."* (emphasis added)

13. Natural gas continues to be conveyed via the pipeline that bisects Plaintiff's property.

14. Sometime after 1954, Eva Mae and Jesse Stevens subdivided their 83 acres.

15. As stated earlier, the Trust is the current owner of 17.859 acres of the original 83 acres.

16. None of the existing owners of the remaining roughly 65.1 acres of the Stevens' 83 acres receive natural gas from SRW 12002.

17. In approximately 2009, Plaintiff became the sole recipient of the tap to get the pay gas service from the entirety of the 83 acres covered by the 1954 Right-Of-Way Agreement after executing a document exclusively authored and tendered by the Defendant entitled "Agreement for a Conditional Limited Time Gas Service TCO Request," commonly referred to as an "Overburn Agreement." The Overburn agreement is attached hereto as Exhibit B.

18. Since that time, Plaintiff has received the natural gas service to heat their home from the Columbia pipeline that is currently their only heat source.

19. On or about January 5, 2023, Plaintiffs received a Notice from Columbia of its intent to discontinue the flow of gas that services their home by July 5, 2023. The Notice is attached hereto as "Exhibit C."

20. The Notice states in operative part:

> *"To ensure safety and compliance with integrity and industry standards, we intend to encapsulate and abandon the tap which your local distribution company is currently providing you service."*

21. In subsequent correspondence from Columbia's in-house counsel to the undersigned dated February 9, 2023, which is attached hereto as "Exhibit D," Columbia stated:

> *"Columbia has identified several operational and safety concerns related to the gas tap located on your clients' property. Such concerns include but are not limited to an interruption of natural gas flow as well as the most recent of which was the removal of more than one hundred (100) gallons of fluid. Per Columbia's rules and regulations, Columbia maintains "the right to shut off the farm tap if made aware of an unsafe condition on its facilities."*

22. The February 9, 2023 letter further states that:

> *"...Columbia maintains the right to encapsulate the tap for the purpose of confirming safety of your clients, the surrounding community as well as its assets."*

23. Columbia exclusively has the power, authority and obligation to maintain the natural gas pipeline that bisects the Trust's property and the tap that routes natural gas to the home in a safe manner and condition.

24. Columbia's stated assertion that a legitimate safety concern that necessitates the termination of Plaintiffs' gas service is belied by its decision not to address this alleged dangerous condition until July 5, 2023.

25. If however, there actually is a legitimate safety issue with regards to Columbia's existing pipeline, then it should be immediately cease using the pipeline to transport natural gas across Plaintiffs' property, because to do so endangers both their safety and the safety of their property.

26. Should Columbia terminate the Plaintiff's gas service on or before July 5, 2023, it will be in material breach of its obligations imposed by the 1954 Right of Way Agreement to provide at least one pay gas service to any dwelling located within the Stevens' 83 acres.

27. In the event Columbia breaches the Right of Way Agreement by ceasing to provide the pay gas service to the Plaintiff, then Columbia should be found to have forfeited its Right-Of-Way, and therefore, be required to remove the pipeline from Plaintiffs' acreage and to compensate Plaintiff for the physical damage to its real and personal property caused thereby.

## COUNT 1: ANTICIPATORY BREACH OF CONTRACT

28. Plaintiff incorporates the allegations contained in Paragraphs 1 through 27 as if fully restated herein.

29. If Columbia elects to encapsulate and/or abandon and/or shut off Plaintiff's tap, and therefore its natural gas service to their home, Columbia will be in material breach of its obligations set forth in the Right of Way Agreement.

30. Plaintiff will be damaged as a result of Columbia's breach including but not limited to the cost of converting to an alternate source of heat and increased home energy costs.

## COUNT 2: EJECTMENT FROM REAL PROPERTY

30. Plaintiff incorporates the allegations contained in Paragraphs 1 through 29 as if fully restated herein.

31. Any and all rights of the Defendant to utilize Plaintiff's property for its pipeline operations are contingent upon Defendant's full compliance with the obligations imposed upon it by the 1954 Right of Way.

32. Defendant, per its correspondence attached hereto, has stated its intent to anticipatorily repudiate its obligations imposed by the 1954 Right of Way, given its stated intent to terminate the Plaintiff's gas service.

33. Upon Defendant's termination of Plaintiff's gas service it should be ejected from Plaintiff's property and be ordered to remove its pipeline from their acreage and surrender all rights, contractual or otherwise to Plaintiff's property.

34. To the extent that Defendant's removal operations physically damage Plaintiff's property, the Plaintiff is entitled to a judgment for monetary damages against the Defendant sufficient to adequately compensate if for said damages and to recompense plaintiff for its reasonable incurred attorney's fees and Court costs.

## **COUNT 3: DECLARATORY JUDGMENT**

35. Plaintiff incorporates the allegations contained in Paragraphs 1 through 34 as if fully restated herein.

36. Plaintiff brings this action pursuit to Ohio Revised Code Chapter 2721 and Ohio Rule of Civil Procedure 57 as this Complaint sets forth justiciable controversies.

37. Plaintiff seeks the issuance of the following Declarations by the Court:

   a. That the Defendant, upon its planned July 5th, 2023 abandonment, shut off, and/or termination of Plaintiff's natural gas service will constitute a material breach of the 1954 Right of Way Agreement.

   b. That unless Defendant immediately relents and covenants not to take such threatened action, that it will be in material breach of its obligations imposed by the 1954 Right of Way Agreement and therefore, will be

required to remove its existing pipeline from Plaintiff's acreage and pay the Plaintiff for the damage to their property caused by said operations.

c. That the Defendant be subject to a monetary judgment in Plaintiff's favor as prayed for below.

**WHEREFORE**, Plaintiff demands total monetary judgment against the Defendant in an amount to be demonstrated at the trial of this matter of not less than Seventy Thousand dollars ($70,000) in addition to the issuance of the Declarations prayed for herein. As to all Counts of the Complaint, Plaintiff demands the issuance of additional awards for attorney's fees and costs and for all other relief deemed appropriate by the Court at equity or at law.

Respectfully submitted,

*/s/ Mickellea M. Tennis*

John M. Snider (0024281)
Mickellea M. Tennis (0099955)
STEBELTON SNIDER LPA
109 N. Broad Street, Suite 200
P.O. Box 130
Lancaster, OH 43130
Ph.: (740) 654-4141; Fx.: (740) 654-2521
Email: jms@stebelton.com; mmt@stebelton.com
Client No.: 24747.1
*Attorneys for Plaintiffs Robert and Dorothy Cline, Individually and Trustees*

FORM C01 COD

# RIGHT OF WAY

 R-601#24

For and in Consideration of One Dollar to ...*them*... in hand paid, receipt of which is hereby acknowledged, and the further consideration of ~~one Dollar~~ (**c**) per lineal rod, to be paid when such grant shall be used or occupied *Eva Mae Stevens and Jesse Stevens* *(Wife and Husband)*

(hereinafter called the Grantor....) do.... hereby grant to THE OHIO FUEL GAS COMPANY (hereinafter called the Company), its successors and assigns, the right to lay a pipe line over and through the premises hereinafter described, and to maintain, operate without restriction or limitation, repair, replace and remove same, together with valves and other necessary appurtenances on lands in Lot............, Section............, ...*Laurel*...........Township, ...*Hocking*...........County, Ohio, situated in Qr. Twp. No............, Township No............, Range No............, and bounded as follows:

On the North by lands of ...*Marg't K. Risch*...
On the East by lands of ...*Harry Disbennett, Dan Ringhiser*...
On the South by lands of ...*Wilbur F. Krinn*...
On the West by lands of ...*Everett M. Soter, Emma Shaw*...
and containing ...*53 ±*... acres, more or less, with the right of ingress and egress to and from the same.

The Grantor.s. may use and enjoy the said premises, subject to the rights herein granted to the Company. All pipe, except where risers with attached valves may become necessary, shall be buried so as not to interfere with the cultivation of the land. The Company shall pay any damages which may arise to crops and fences from the laying, maintaining, operating, repairing, replacing and final removing of said pipe line. Said damages, if not mutually agreed upon, to be ascertained and determined by three disinterested persons, one thereof to be appointed by said Grantor.s., ...*their*... heirs or assigns, one by the Company, its successors or assigns, and the third by the two appointed as aforesaid, and the award of such three persons shall be final and conclusive. The Company, its successors or assigns, may at any time lay, maintain, operate, repair, replace and remove other lines of pipe elsewhere on said premises, upon the payment of a like consideration for each line, and subject to the same conditions as above; the laying of any one line of pipe shall not fix or limit the right of way herein granted. The Company may replace or change the size of its pipes, without interruption to service, by paying the damages, if any, to crops and fences which may arise in making such change.

While gas is conveyed through said premises, Grantor.s., ...*their*... heirs and assigns, shall have the right to purchase gas for domestic use in one dwelling on said premises, subject to the Company's rules and regulations at the rate provided in the current established rate schedule filed with the Public Utilities Commission of Ohio applicable in the territory where gas is to be delivered. If no established rate schedule is applicable in said territory, then the rate prevailing in the nearest community served by the Company shall apply. Grantor shall pay for all gas so delivered within ten (10) days after the bill for the monthly reading period has been issued. Whenever the Company, its successors or assigns, shall desire to remove or abandon a pipe line constructed under authority of this right of way, the Grantor.s. right to purchase gas therefrom shall cease and terminate.

Payment of all money due Grantor.s. hereunder may be made to ...*Eva Mae Stevens*... by check made payable to ...*her*... order and mailed to ...*her*... at ...*R.F.D. #1 Rockbridge*..........., Ohio.

In Witness Whereof, the Parties hereto have hereunto set their hands this ...*1st*... day of ...*July*..., 19*54*.
Signed and acknowledged
in the presence of:

*T. K. Hacker, Jr.*
*B. M. Shaw*

*Eva Mae Stevens*
*Jesse Stevens*

STATE OF OHIO
COUNTY OF *Hocking* : ss.

Personally appeared before me, a ...*Notary Public*...in and for said County
...*Eva Mae Stevens and Jesse Stevens*...
who acknowledged the signing of the foregoing instrument to be ...*their*... voluntary act and deed for the uses and purposes therein mentioned.

In Testimony Whereof, I have hereunto set my hand and affixed my official seal this ...*1st*... day of ...*July*..., 19*54*.

*B. M. Shaw*
*Notary Public*

*B. M. Shaw*

EXHIBIT
A

R039723-000

R-601  #29V  #9901  #/20

**RIGHT OF WAY**

Eva Mae Stevens and
Jesse Stevens

TO

**The Ohio Fuel Gas Co.**

Date July 4, 1954
Twp. Laurel
County Hocking
LINE NAME R601
To _____
Inch line from _____
Amount Paid $ _____  Fee _____  Rods _____  Rate _____

Checked by W.R.
Recorder, please use reverse side.

Vol. _____  No. _____
Page _____  File _____

Recorder's No. _____
Filed for Record Aug 16, 1954
at 12:52 o'clock P.M.
Recorded Aug 24, 1954
Vol. 99 Page 615
of Leases Records.
Ezekiel Carpenter
Recorder, Hocking Co., Ohio

STATE OF OHIO, ................................ COUNTY, ss.

Personally appeared before me, a ........................................................ in and for said County

........................................................................................................................

who acknowledged the signing of the foregoing instrument to be ................ voluntary act and deed for the uses and purposes therein mentioned.

In Testimony Whereof, I have hereunto set my hand and affixed my official seal this ........ day of ................, A. D., 19 ....

........................................................

STATE OF OHIO, ................................ COUNTY, ss.

Personally appeared before me, a ........................................................ in and for said County

........................................................................................................................

who acknowledged the signing of the foregoing instrument to be ................ voluntary act and deed for the uses and purposes therein mentioned.

In Testimony Whereof, I have hereunto set my hand and affixed my official seal this ........ day of ................, A. D., 19 ....

R039723-000

Instrument    Book Page
201000000997 OR   446   966

FORM CS 2-54 CSD (2-84)

**COLUMBIA GAS DISTRIBUTION COMPANIES**

| CDC AREA OFFICE | AGREEMENT FOR CONDITIONAL, LIMITED TIME GAS SERVICE TCO REQUEST | CDC LOCATION NUMBER |
|---|---|---|

THIS AGREEMENT, made this 22nd day of June, 2009, by and between

NAME OF APPLICANT (AND SPOUSE IF ANY): Robert E & Dorothy J Cline (Husband/wife)

SERVICE ADDRESS: 37671 Wildcat Rd, Rockbridge, OH 43149

Hereinafter called "Applicant", party of the first part,

DISTRIBUTION COMPANY: Columbia Gas of Ohio, Inc.

ADDRESS: 200 Civic Center Drive, Columbus, OH 43215

Hereinafter called "Distribution Company", party of the second part and

TRANSMISSION COMPANY: Columbia Gas Transmission LLC

ADDRESS: 1700 MacCorkle Ave. S.E., Charleston, West Virginia 25314

Hereinafter called "Transmission Company", party of the third part; WHEREAS, Applicant has heretofore filed an application for gas service with Distribution Company, said gas to be used by one (1) customer on premises owned by applicant situate in

| | LOT | QUARTER | SECTION |
|---|---|---|---|
| | NA | E ½ of SW | 01 |

| TOWNSHIP | PARCEL NUMBER | | DATE acquired by a deed dated 04/01/2005 | of record in | COUNTY |
|---|---|---|---|---|---|
| Laurel | 80000130100 (10 acres) | | | | Hocking |

| STATE | TYPE | | VOLUME | PAGE | | |
|---|---|---|---|---|---|---|
| Ohio | Warranty Deed | Recorded in: | 0331 | 391-393 | for ☒ residential ☐ commercial or |

☐ industrial purposes; and WHEREAS, a service line is required on a pipeline facility owned by Transmission Company for ☒ new,

☐ manifold, or ☐ continuation of service of natural gas to be supplied to Applicant from Transmission Company

LINE NO. SRW-12002 which is

a production, storage or transmission pipeline; and external physical protection of Transmission Company and Distribution Company Equipment ☐ is ☐ is not required at time of installation; and unless Applicant already owns the land at the location of the service line and all other facilities to be installed by Transmission Company and Distribution Company hereunder, Applicant is entitled to pay gas service from an easement granted by the landowner: Eva Mae Stevens, et vir

| | DATE 07/01/1954 | of record in | COUNTY Hocking | STATE Ohio |
|---|---|---|---|---|

| TYPE Right-of-Way | Recorded in: | VOLUME 99 | PAGE 615 | so that applicant will be entitled to grant to Transmission Company |
|---|---|---|---|---|

and Distribution Company the easement described in Section 9 below.

Applicant, Distribution Company and Transmission Company, for themselves and their heirs, successors and assigns, mutually agree to the following terms and conditions:

1. Service hereunder will be made possible at the sole discretion of Transmission Company by a Company service line installed on its pipeline, and only when and for so long as the rendition of such service will not adversely affect the primary function of the production, storage or transmission pipeline from which Applicant is served.
2. Applicant understands and agrees that Applicant must make a payment to Distribution Company under the provisions of Section 9 hereof, in the amount of $200.00 as a contribution in aid of the cost of high pressure service regulator(s), before work will be commenced to install the facilities necessary for service hereunder.
3. Service is granted to Applicant only because Transmission Company makes the gas available to Distribution Company for resale to Applicant; and Applicant understands that Transmission Company does not hereby agree to serve Applicant directly, either now or at any time in the future. Such service to Applicant is made subject to the absolute right of Distribution Company to discontinue such service, upon thirty (30) days' notice, for any reason, including, but not limited to, the following reasons:
    (a) When the production, storage or transmission pipeline of Transmission Company serving Applicant is no longer deemed necessary by Transmission Company.
    (b) When the supply of natural gas contemplated by Transmission Company for service to Applicant becomes depleted or exhausted.
    (c) When the volume or pressure on such Transmission Company pipeline is reduced to a level which Transmission Company deems unsatisfactory to maintain service to Applicant, or to fulfill the other purposes of such pipeline.
    (d) Whenever Transmission Company elects to relocate, reclaim or abandon its pipeline.
4. Transmission Company or Distribution Company may, without notice to Applicant, interrupt the delivery of gas to Applicant, whenever in its sole judgment such action is essential to the preservation or conservation of the health, safety or property of Transmission Company or Distribution Company, or the employees of either, or Applicant or the public generally.

VOL 0446 PAGE 966

EXHIBIT B

FORM CS 2.34 (2017)

5. Transmission Company and Distribution Company make no warranty, express or implied, as to the length of time such natural gas for the contemplated service will be available.
6. Applicant convenants that his service hereunder will be surrendered upon request of Distribution Company and in accordance with the terms of this Agreement, and further covenants that should he refuse to surrender the service upon request so as to delay or impede Transmission Company in removing said pipeline from service, or so as to cause Transmission Company to operate or maintain said pipeline in an inefficient manner in order to maintain service to Applicant and to fulfill the other purposes, if any, of said pipeline, such action shall constitute a breach of this Agreement; and Applicant shall thereupon be liable in damages to Transmission Company for its costs from time to time incurred in consequence of such breach hereof.
7. Transmission Company agrees that at such time as service shall be permanently and finally terminated to Applicant under Section 3 hereof, it shall, upon request of applicant pay to Applicant in full satisfaction of any and all claims against Transmission Company and Distribution Company, and to aid and assist Applicant in the costs attendant to the transfer to the most economical alternate source of energy where gas is not readily available from another supplier, a sum reckoned according to the following schedule:

| Time elapsed from initial service hereunder to termination | Where gas is not readily available from another supplier |
|---|---|
| 5 years or less | Alternate fuel costs (up to 200 million B.T.U. per year) for 3.0 years |
| 5 to 15 years | Alternate fuel costs (up to 200 million B.T.U. per year) for 2.0 years |
| More than 15 years | Alternate fuel costs (up to 200 million B.T.U.) for 1.0 year |

8. In the event that the line from which Applicant is receiving service is sold by Transmission to any party, Transmission shall require the purchaser of said line to accept responsibility for providing gas service to or for the Applicant, which responsibility shall include, but not be limited to, the payment of any and all conversion costs and other costs related to Applicant as a result of termination of gas service due to abandonment of or termination of use of the line.
9. In consideration of the premises, Applicant hereby grants to Distribution Company and Transmission Company an easement for a site, acceptable to them, for the location of a Company service line, a cleaner, heater, regulators, meter and building, as may be required, at a point not to exceed twenty (20) feet from the pipeline of Transmission Company. At Applicant's own cost, and expense, Applicant shall furnish, lay, connect and maintain the house lines used for the safe and practical transporting and controlling of gas to be served, and install meter protection from external forces, when required. Transmission Company agrees to furnish, install and maintain the necessary Company service line from its pipeline, which will include any necessary gas cleaning equipment. All installations performed by person other than Distribution Company or Transmission Company are subject to Distribution Company approval in accordance with the then effective Form C 2235, Standards for Gas Piping on Customer's Premises, and in accordance with the National Fuel Gas code Z 223.1 or any other applicable National Standards for pipeline installations.
10. Distribution Company shall furnish, at its own cost and expense, except as otherwise provided below, the meters, fittings and a service regulator for furnishing the gas to be supplied hereunder, subject to the following terms and conditions:
    (a) If the Transmission Company pipeline from which Applicant is to be served is operated at a pressure not exceeding 60 psig. Distribution Company will furnish the necessary service regulator at no cost to Applicant.
    (b) If the Transmission Company pipeline from which Applicant is to be served is operated at a pressure in excess of 60 psig but not in excess of 200 psig, which will necessitate a high pressure service regulator in addition to the service regulator to be furnished by Distribution Company, Applicant will be required to make a payment to cover the cost, installed, of the high pressure service regulator.
    (c) If the Transmission Company pipeline from which Applicant is to be served is operated at a pressure in excess of 200 psig, two high-pressure service regulators will be required, in addition to the service regulator to be furnished by Distribution Company. Applicant will be required to make a payment to cover the cost, installed, of the high-pressure service regulators.
    (d) Subsequent to this Agreement, Distribution Company agrees (I) to replace as necessary all service regulators installed under this section 10 and (II) install any additional service regulators needed at this location, at Distribution Company's cost and expense. If this Agreement supersedes a pre-existing service Agreement, Distribution Company shall bear the cost and expense of replacing pre-existing service regulators.
    (e) Pursuant to agreement between Transmission Company and Distribution Company, Transmission Company shall pay costs associated with the following: (1) installation of the tap to establish service for Applicant; (2) one half of the cost of the installation of the meter and meter hardware associated with the establishment of service to Applicant, in the amount of $475; (3) the installation of the service line from Transmission Company" pipeline to the first shut off valve prior to the first regulator which serves Applicant's meters; (4) any and all valves associated with providing service to Applicant under this agreement; and (5) the conversion of Applicant to an alternate fuel if Transmission Company abandons its facilities utilized to establish and/or provide service to Applicant, provided that such abandonment is for reasons other than the sale of said facilities.

FORM CS 344 (Cont'd)

Applicant agrees that any payments received by Distribution Company for the installation of high-pressure service regulators will not be refunded after the service regulators have been installed. Distribution Company will own and be responsible for operation and maintenance of all service regulators.

Applicant agrees to maintain, at his own cost and expense, the house lines and installed meter protection from external forces, when required, in an operating condition satisfactory to Distribution Company. All material furnished by either Applicant or Distribution Company or Transmission Company may be reclaimed and removed from the premises by the party owning same at the termination of this Agreement.

11. Where a heater must be operated on the inlet side of a service regulator for a residential consumer, the heater and the gas used to operate such heater shall be supplied by Transmission Company at its expense.
12. Applicant agrees to notify Distribution Company of all problems arising out any variations in the pressure of gas in the house lines as well as defects in pipe, connections or appliances, the escape or leaking of gas, the sticking of valves or regulators and other irregularities incident to the service equipment of Applicant.
13. Distribution Company and Transmission Company shall have access at all times to all equipment herein provided for, for the purpose of determining whether such equipment is in proper condition and operated in accordance with this Agreement, and as well with the Rules, Regulations and Schedules of Distribution Company applicable to the jurisdictional public service customers, which said Rules, Regulations and Schedules as they exist from time to time shall also apply to this Agreement and are hereby specifically made a part hereof by reference.
14. The maximum pressure at which gas is to be supplied to Applicant for residential use shall not exceed seven (7) inches water column at the outlet of the service regulator. For commercial or industrial use, the maximum outlet pressure shall be seven (7) inches water column ____ psig or _X_ Not Applicable. The responsibility or the care of all service regulators and their proper adjustment to conform with the above specified pressure shall rest with Distribution Company. Applicant agrees to install a customer service line and house line of sufficient size to give adequate service at this pressure.
15. The Applicant agrees that Distribution Company shall have the right, without notice, to shut off the gas at any time from Applicant for any of the following causes; (a) for repairs; (b) for want of gas supply; (c) for non-payment of bills when due; (d) for any violation of this Agreement by Applicant; (e) upon discovery of a flow of stray electric current upon the house lines that is or might become dangerous; (f) in the event that gas service hereunder was secured by Applicant's misrepresentation; (g) manipulation of the service regulators to increase the pressure above that originally set; (h) when hazardous conditions of the Company or customer service lines or house lines or appliances are found so that a shut-off is required for safety reasons; (i) when leaks are found that require prompt repair for safety reasons, and when repairs are not made promptly by Applicant; and (j) for use of gas by any consumer other than Applicant or his tenant as the one consumer on Applicant's premises.
16. At all times, Applicant agrees to service, repair and maintain in good and safe condition all house lines, fixtures, appliances, equipment and facilities owned by or installed by Applicant hereunder. Applicant further agrees to hold Distribution Company and Transmission Company harmless from any and all liability imposed against it arising from Applicant's use, maintenance, repair or ownership of the same.
17. Distribution Company or its agent, may require Applicant to supply a reasonably safe guarantee or a cash deposit. Said deposit will be refunded when the delivery of gas has been discontinued, after all bills due to Distribution Company have been paid and the receipt for such deposit has been surrendered.
18. Upon the request of Applicant, Distribution Company will test the accuracy of the meter, provided Applicant deposits with Distribution Company a sum of money sufficient to cover the costs arising from the removal and replacement of the meter for testing purposes. A meter registering between three percent (3%) fast and three percent (3%) slow shall be deemed for all purposes to be registering correctly. When the meter is tested and is found to be registering correctly, Distribution Company shall retain such part of said deposit as was actually expended in the removal and testing of the meter. If said deposit should be insufficient to fully cover said actual expense, Applicant shall pay the difference. When the meter is tested and found to be registering incorrectly, Distribution Company will refund to Applicant the entire amount of the deposit. Provided, however, that where State meter testing rules vary from the above, such State rules shall control.
19. Applicant agrees to pay Distribution Company for all gas so delivered on receipt or before the due date of the bill for the monthly period and at the rate prevailing form time to time in the general locality in which Applicant is served hereunder.
20. Applicant understands, and by the execution of this Agreement specifically agrees, that the service herein contemplated is a private commercial service and is not utility service subject to public regulation, unless State law otherwise requires, and that nothing herein contained shall be construed as implying an intention or "holding out" on the part of either Distribution Company or Transmission Company to serve the public in the area generally, or to dedicate any of its facilities to public use or service. All parties agree that both Distribution Company and Transmission Company are subject generally to regulation, so that this Agreement is subject to any lawful governmental order applicable thereto.
21. As Applicant's right to receive pay gas service may not be exclusive to Applicant, service must be established during a period of one (1) year from this Agreement date. If service is not established within that one (1) year period, this Agreement shall be null and void, and Applicant will have to reapply for pay gas service. Additionally, during that one (1) year period, if service

VOL 0446 PAGE 968

has yet to be established and another person who holds a similar, non-exclusive right to receive pay gas service, provided by the referenced land rights agreement, makes a request to receive pay gas service, then the Applicant shall have thirty (30) days to establish service. If service is not established within that thirty (30) day period, this Agreement shall be null and void.

IN WITNESS WHEREOF, said parties have hereunto set their hands this ___19___ day of ___September___, 20_09_.

APPLICANT AND CO-APPLICAN (IF ANY):

___Robert E. Cline___
Robert E. Cline

___Dorothy J. Cline___
Dorothy J. Cline

COLUMBIA GAS OF OHIO, INC.
By: ___Chuck Shafer___
Chuck Shafer; Vice President, Engineering

COLUMBIA GAS TRANSMISSION CORPORATION
By: ___Sheyee L. Parks Downey___
Sheyee L. Parks Downey; Director, Asset Management

STATE OF OHIO        )
                     )   TO WIT:
COUNTY OF _Hocking_  )

BE IT REMEMBERED, That on this __18__ day of __September__, 20_09_, before me personally came _Robert E. Cline and Dorothy J. Cline_ the Applicant(s) in the foregoing instrument, and acknowledged the signing thereof to be their voluntary act and deed.

IN TESTIMONY THEREOF, I have hereunto subscribed my name and affixed my notary seal

___Amanda Thompson___
Notary Public

AMANDA THOMPSON
Notary Public, State of Ohio
My Commission Expires
01/09/2013

VOL 0446 PAGE 969

Page 4 of 5

Jan 01 2000 12:26AM HP FaxHocking Co Recorder 7403850377                    page 7

[illegible]

My Commission Expires _____

```
201000000997
Filed for Record in
HOCKING COUNTY, OHIO
SANDRA K LEACH-HUNT
04-07-2010 At 10:01 an.
AGREE-LEASE         72.00
OR Book  446 Page  965 -  970
```

STATE OF OHIO          )
                       ) SS:
COUNTY OF FRANKLIN     )

BE IT REMEMBERED, That on this __30th__ day of __September__, 20_09_, before me personally came __Chuck Shafer, Vice President, Engineering__, on behalf of COLUMBIA GAS OF OHIO, INC. in the foregoing instrument, and acknowledged the signing thereof to be their voluntary act and deed on behalf of the corporation.

IN TESTIMONY THEREOF, I have hereunto subscribed my name and affixed my notary seal

_Sharon L. Booth_
Notary Public

SHARON L. BOOTH
Notary Public, State of Ohio
My Commission Expires 11-09-2012

My Commission Expires __11/9/2012__

STATE OF WEST VIRGINIA  )
                        ) SS:
COUNTY OF KANAWHA       )

BE IT REMEMBERED, That on this __25__ day of __September__, 20_09_, before me personally came __Sheree L. Parks Downey, Director, Asset Management__, on behalf of COLUMBIA GAS TRANSMISSION CORPORATION in the foregoing instrument, and acknowledged the signing thereof to be their voluntary act and deed on behalf of the corporation.

IN TESTIMONY THEREOF, I have hereunto subscribed my name and affixed my notary seal

_Lisa L. Snyder_
Notary Public

My Commission Expires __11-17-2016__

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
Lisa L. Snyder
1332 1/2 WV Avenue
Dunbar, WV 25064
My Commission Expires November 17, 2016

This Instrument Prepared By (and Return to):
Columbia Gas Transmission Corporation
ATTN: Land Assets – Third Floor
P. O. Box 1273
Charleston, WV 25325-1273

VOL 0446 PAGE 970

Page 5 of 5

Columbia Gas Transmission, LLC
Attn: Land Services
700 Louisiana St., Suite 1300,
Houston, TX 77002
Tel: 1.877.287.1782
landowners@tcenergy.com

 TC Energy

January 5, 2023

**Via Certified Mail – Return Receipt Requested**

Robert & Dorothy Cline Trustees
27421 Wildcat Road
Rockbridge, OH 43149

Re:   **Termination of Natural Gas Service via a Tap**
      **PSID No.: 501057262**
      **Discontinuance of Gas Flow to the Tap on Columbia Line No.: SRW12002**
      **Service Address: 27421 Wildcat Road, Rockbridge, OH 43149**

Dear Robert & Dorothy Cline:

On behalf of Columbia Gas Transmission, LLC ("Columbia"), we are reaching out regarding the tap on the existing natural gas pipeline known as Line No. SRW12002 located in Rockbridge, Ohio. Columbia will be discontinuing the flow of gas to the tap ("tap") on July 5, 2023. This will result in the corresponding cessation and termination of natural gas to the service address referenced above.

Please understand that Columbia does not sell or deliver gas to individual consumers. Columbia is engaged in the business of interstate transmission and storage of natural gas and is regulated by the Federal Energy Regulatory Commission ("FERC"). Columbia transports and stores natural gas for a variety of shippers (including local distribution companies) under the terms and conditions of Columbia's tariff on file with FERC. Columbia neither owns the gas transported by and stored in its facilities, nor operates its facilities for the purpose of serving individual consumers.

To ensure safety and compliance with integrity and industry standards, we intend to encapsulate and abandon the tap from which your local distribution company is currently providing you service. Because Columbia does not provide distribution services, once we discontinue the flow of gas to the tap, the tap will be retired, and you may need to convert to an alternative source of energy or, if available, transfer to receive gas from a co-op or local distribution company serving your area. As a courtesy to you and to offset any inconvenience this may pose, we would like to discuss providing a potential payment to assist you with this transition.

We truly appreciate your cooperation. If you have any questions, please contact me on my direct line at 859-533-7125 or by email at mike_honaker@tcenergy.com.

Very truly yours,

*Mike Honaker*

Mike Honaker
Contracted Land Agent
TCEnergy.com

L1220



EXHIBIT C

**Columbia Gas Transmission, LLC**
700 Louisiana St., Suite 1300,
Houston, TX 77002
allison_wells@tcenergy.com

 TC Energy

February 9, 2023

**VIA U.S. MAIL AND ELECTRONIC MAIL**

Mr. John M. Snider
109 North Broad Street
Suite 200, PO Box 130
Lancaster, Ohio 43130
JMS@stebelton.com

**Re:** Termination of Natural Gas Service via a Tap
**PSID No.: 501057262**
Service Address: 27421 Wildcat Rd, Rockbridge, OH 43149

Dear Mr. Snider:

I am writing in response to your January 27, 2023 letter regarding the termination of natural gas service via the tap from which Robert and Dorothy Clines ("the Clines") local distribution company is currently providing gas service to the above referenced address. For the reasons outlined in this letter, Columbia Gas Transmission, LLC ("Columbia") still intends to encapsulate and abandon the tap on July 5, 2023.

As indicated in my January 5, 2023 letter, the encapsulation is to ensure safety and compliance with integrity and industry standards and to further ensure the continuous safe flow of gas. Columbia has identified several operational and safety concerns related to the gas tap located on your clients' property. Such concerns include, but are not limited to, an interruption of natural gas flow as well as the most recent of which was the removal of more than one hundred (100) gallons of fluid. Per Columbia's rules and regulations, Columbia maintains "the right to shut off the farm tap if made aware of an unsafe condition on [its][1] facilities." A copy of the referenced rules and regulations have been attached for your convenience.

Columbia agrees that the Clines are parties to an Agreement for Conditional Limited Time Gas Service ("TLSA") dated September 18, 2009, and not August of 2009 as stated in your letter. Furthermore, Item 5.of the TLSA states "Transmission Company and Distribution Company make no warranty, express or implied as to the length of time such natural gas for the contemplated service will be available." The Clines' right to access gas via a tap is derived solely from the right of way dated July 1, 1954, which states the right to "purchase gas for domestic use in one dwelling on said premises" of which is *subject to the Company's rules and regulations*." (emphasis added) As such, Columbia maintains the right to encapsulate the tap for the purpose of confirming safety of your clients, the surrounding community as well as its assets.

Should you desire to discuss this matter further, please contact me via my direct line at (832) 320-5376, or via email at allison_wells@tcenergy.com. In the meantime, your clients are encouraged to begin conversion to an alternative energy source in advance of July 5, 2023.

Very truly yours,



**Allison K. Wells**
Legal Counsel - TC Energy/Columbia Gas Transmission, LLC

---

[1] Note that the rules and regulations specifically state "transmission company", and due to Columbia's status as a transmission company, the substitution of "its" for "transmission company" is valid.

TCEnergy.com

L.1220


EXHIBIT D